All right, I will next call the case, I'm just going to use the shorthand of Godiva Good morning, Your Honor, may it please the Court, I'm Eric Alan Isaacson, I'm here pro bar this Court, also representing appellant James Price, Alan McDonald will be arguing, so we'll be splitting our time, I'll be taking 8 minutes for opening, Mr. McDonald will be taking 3 minutes, he will be focusing on the issue of the adequacy of class notice compliance with Rule 23H and the Mercury Interactive issue, for rebuttal, I'd like to... Mr. Isaacson, before you start, with my colleague's indulgence, I'd like to take you on a little bit of a trip, so you are challenging in part, the Article 3 standing of the named plaintiff and class representative in this case, right? That is correct, Your Honor. Okay, let's talk a little bit about your standing, and see if you agree with these principles and then I'll ask you a question about it at the end. The general rule is that a party who obtains a favorable verdict below cannot generally appeal unless there are parts of that verdict that are adverse to him, do you agree with that proposition? I agree with that, Your Honor. Okay, and so to the extent that the verdict, the class settlement was favorable to you, and it was favorable to you in some respects, was it not? You, as a class member, obtained some relief, right? I obtained a fraction of the relief that I would have obtained. It doesn't matter, the same reason why you think that you have a basis for challenging standing, you obtained some relief from the settlement, did you not? There is the opportunity to make a claim, yes, that is some relief, and I also am barred from asserting my own claim in the event that I am a victim of identity theft. Yeah, but that's because you chose not to opt out on the second part of it. So let's continue down this road for a little bit longer. With regards to not the issues of the fees paid to class counsel, not with regards to the failure to follow appropriate process for people to file their objections, how do you have standing, Article III standing, to assert the lack of standing by the named plaintiff which got you relief as a member who chose not to opt out? Well, the court is obligated to consider the issue of standing, so it's spontaneous. First we have to consider our own jurisdiction and your standing. There's a plethora of cases from all the circuits, and there's the Steele Company case from the Supreme Court that says, before we address the subject matter jurisdiction of the district court, we have to address the subject matter jurisdiction of ourselves on appeal. Absolutely. That means you have to explain why you have Article III standing on appeal first. And my question to you is, how do you have Article III standing to assert, not those other claims, but the claim of lack of Article III standing when a favorable ruling for you on that claim would be adverse to you? As you stated, Your Honor, I have standing to object to the attorney's fees, because the attorney's fees reduces the amount of the recovery for the plaintiff. I'm not disputing that. If I have standing to take an appeal to this circuit on the basis of the attorney's fees issue, the first issue that your rules require me to address is this court's appellate standing. Every litigant has to... Standing is not granted in gross. Supreme Court has made it very clear that a litigant has to establish standing for every claim that he or she or it asserts. I have no doubt, and I speak only for myself, that you have standing to be here. I am questioning whether you have standing to challenge the named plaintiff's lack of Article III standing when a favorable ruling in that situation would be adverse to you. Where is the concreteness? A favorable ruling would not be adverse to me because I am bound by a class action. Only because you chose to be, you could have easily decided to opt out and mount your own claim and that would have put you in the same position that you would be in if you win on the Article III standing issue in this case. Is that not correct? Rule 23 would put me... Is that not correct? Answer the question. It would put me individually in a similar position. I'm sorry? It would put me individually in a similar position if I win this appeal. But you're only an individual here. I have standing to appeal on the issue of attorney's fees. For this court to have appellate jurisdiction over my appeal, which I have standing to appeal on attorney's fees, as you've conceded, there has to be Article III jurisdiction in the case in the first place. And there's not. I still have not heard a reason why you should be the proper party to assert lack of Article III standing on a class settlement that got you some relief in a scenario where you chose not to opt out. It got me some relief at the cost of sacrificing my rights. What rights did you sacrifice? If what you were saying was... What rights did you sacrifice? The right to pursue my own case if I'm a victim of identity theft. No. You could have opted out. That didn't stop you at all. If you wanted to pursue your own case, whether or not there was Article III standing for the named representative, all you had to do was opt out. Is that not accurate? That is accurate. Can we move on to the attorney's fees? No. No. Because unless you convince me or give me a plausible reason why you can assert Article III standing or the lack thereof, then that's going to be an issue for you.  I agree with you on that point. You can move on. It is not the law that Article III is not an issue in any case where somebody could have opted out. I mean, any 23B class action, people can opt out and standing can still be... Article III standing can still be an important and real issue. Now with respect to Purdue on the attorney's fees, the United States Supreme Court has ruled now that in fee-shifting cases, and we've got claims here subject to a fee-shifting statute, the reasonable attorney's fees are the load star. We have no evidence for the load star. That wasn't a common fund case. Purdue is not a common fund case, but it sets up a horrible conflict of interest if lawyers who successfully litigate a case to a judgment for plaintiffs get their load star, and lawyers who settle a case can get a large multiple of their load star, which I think you clearly have here because they would not put their time in. They would not even tell the court what their time was, so you've got a windfall fee award in this case as a consequence of that. I'd also like to address the issue of incentive awards, which I think are prohibited by the Supreme Court's decision. Let me ask you another question. If you prevail on that issue, what would you like the district court to do on remand if you maintain that there's no Article III standing for the named plaintiff to go forward? What favorable relief are you going to get? If there's no Article III standing ... No, no, no. You win on your objection to the attorney's fees, and we say the award of attorney's fees in that settlement was unreasonable. The district court erred in approving the settlement. Remand. What do you say on remand to the district court? On remand to the district court, it lacks Article III jurisdiction before it's out to vacate its judgment. And then you're out. And then you're out of district court. I'm out of district court, and anybody who's members ... And you'd be in the same position that you would be in if you opted out of the class settlement. I am not required to opt out of a class settlement that I object to, Your Honor. You're not. I can't object. I have a right to object. I'm asking you what favorable relief would you get from any ruling in this case in your favor? Favorable relief I get is that the Constitution of the United States has been honored. I took an oath to uphold the Constitution, Your Honor.  No, Mr. Isaacson, we can't speak at the same time. Sorry, Your Honor. Unless I'm mistaken, a litigant's preference that the Constitution be honored is not the sort of injury that gives you Article III standing. If I'm mistaken about that, then there's a lot of ink that's been spilled incorrectly. You can't come into court and just say, I think my government is behaving improperly unless you can show a tangible and concrete injury to yourself. And I want to know, how are you going to be better off with a favorable ruling in your favor in this appeal when you go back down on remand? Your Honor, I wanted to ... Honest with you, Your Honor, I wanted to litigate the issues of attorney's fees under Purdue and incentive awards under Greeno. But you're not going to get a chance to do that. Well, I don't get a chance to do that because I don't think there's Article III standing. And as a matter of candor, I was obligated to tell the court that. I'm sorry that you are offended that I was candid with ... I'm not ... Mr. Isaacson, you're getting this all wrong. I'm not offended at all. I'm asking you a series of questions. Thank you, Your Honor. In the same way that you raised the lack of Article III standing on the name plaintiff's part, I have a question about the lack of Article III standing potentially on your part. It's just a dialogue. I'm not offended by your ... Thank you, Your Honor. ... by your position. I'm sorry. The fact is that I'm bound by the judgment. Other class members are bound by the judgment. I should not be barred from pursuing individual relief or, if there were a class of people who were injured by the violation of fact in this case, a class action on behalf of people who were injured. And I do think I have a right, Article III right, to object that the case has been prosecuted by somebody who did not have an injury, who I don't think had the best interest of the class at heart, and who did not get the kind of settlement that the class would deserve. Who did not get the size of settlement that the class ... If you think that there's no Article III injury ... I'm sorry. Go ahead, Beverly. Go ahead. I think there's no ... If you think that there's no Article III injury shown by the named plaintiff, why should the settlement have been any better for them? Well ... In other words, if you can't show a cognizable claim, why should you get more of a settlement than you did? The fact the named plaintiff has no Article III injury doesn't mean that other class members have no Article III injury. The releasing ... That means you have to wait for a new case. It means you have to wait for somebody who suffers an injury or who has a significant risk of suffering an injury. Did you suffer an injury? I don't know. What do you mean you don't know? I know I got a receipt that had more than digits. I knew I ... You know your own situation, Mr. Isaacson. Did you suffer any injury from the printing out of a credit card receipt with more than the requisite number of digits? I would like to explain that I discarded my receipt. I don't know what happened to the receipt after that. Have you had anybody breach your identity or steal your identity or use your credit card number or make any improper charges to your account or anything else like that? Have you had to get a service like LifeLock or anything else like that because of the chocolatier receipt? Several times since then, I have had credit cards canceled. When the credit card company calls me to say that they believe my credit card is being used for ... The same credit card? I do not know if it was the same credit card. I do not know if there's a direct ... You don't know if you have an injury or not? Direct connection. I do not know, but I'm in a better position than Dr. Moransky who took the receipt and gave it to his lawyers who filed suit in less than a week. Do you want to be the class representative in case number two? I would be happy to be the class representative in case number two if I can demonstrate that my credit card on which there was fraud was the same credit card that was used for the Godiva Chocolatier. Yes. Thank you, Your Honor. Thank you. Good morning. Morning. Objector James. James Price requests that this circuit joint the ninth and the seventh circuits in requiring motions for attorney's fees by class counsel under Rule 23H be filed before the due date of the objections. Rule 23 and its commentary demand that that process be followed, especially in a case like this where class counsel was seeking a 33% enhancement over this circuit's established 20 to 25% attorney's fees benchmark. Did the district court allow objections to be made at the final fairness hearing that had not been lodged on paper beforehand? For example, Mr. Isaacson raised a Spokio issue which had not been raised on papers as far as I can tell as an objection, although the parties had alerted the district court about Spokio being out there and why they wanted to settle. There had not been a Spokio objection by a class member before the allotted time, but Mr. Isaacson was able to assert the Spokio issue at the final fairness hearing. That is correct, yes. He had not made that objection before. Did you have an opportunity? By the time you had the fairness hearing, had the final attorney's fees documents been filed? The final attorney's fees documents, I think, had been filed by that date. The other thing that had happened was that Mr. Isaacson, who was also objecting to the attorney's fees, had sought from class counsel and from the named plaintiff discovery related to the attorney's fees, and that motion for discovery was rejected by the magistrate. There was opportunities that had been taken, and the district court through the magistrate prevented any ability to look into the hours, to look in . . . When they finally filed their document with regard to fees, what did they say about time invested, number of hours, difficulty of case, complexity, et cetera, et cetera? They said it was a hard case, and we worked hard, and there was the Spokio issue out there. There was no detailing of hours and fees or anything like that? Absolutely not. I think Judge Jordan's point is, that was filed . . . Am I correct? It was filed September 7th? The motion for discovery? I know the petition for attorney's fees. I think it was filed on the 12th. There may have been a motion to file excess pages around the 7th, but I don't think that the actual motion was on file. But in any event, you had that, whatever it was . . . Eight days before the fairness hearing, I think it was eight days before the business or before the fairness . . . His question is, what objections did you assert to the attorney's fees petition at the hearing? Well we . . . I think that was his question. We objected to the fact that it exceeded the benchmark. We said, and I think that the objectors agreed on this part, that the attorney's fees should be based on the lodestar that was announced under the Purdue decision. But looking at the order that was actually entered by the district court, the district court ignored the 12 Johnson factors that this circuit has said are mandatory when you exceed the 20 to 25 percent benchmark. That's the half case. I'm sympathetic to your argument on that point. But on the issue of whether or not there needs to be a reversal because the district court required the class members to file written objections before the fee petition was filed, I'm wondering if that's harmless error in this case. If the arguments you're making to us now were the arguments you made at the final fairness hearing, what else could you have done? In other words, if the fee petition had been filed two weeks before your objections were due, what else could . . . If their fee petition was so barren and just simply said in your words, we worked hard, difficult case, spoke you out there, we deserve to get compensated. What else could you have asserted at the final fairness hearing or in your objections with more time that you didn't lodge and didn't preserve? Well, if I had known of what was going to be filed and the fact that there was not going to be really any detail provided, I would have probably joined Mr. Isaacson in seeking some discovery and demanding that that issue or . . . But that's a separate issue. You're denied discovery. Correct. See, I think you'd be in a very different position with regards to the timeliness of the objections issue. If they had filed a fee petition that was 100 pages in length with billing records to God's end and you would have had to sort through all the line items and say it's unreasonable for them to have spent this amount of time on this, this item is duplicative, the fees for that lawyer are excessive. I understand that. It would have been unreasonable for you to do that in seven or eight or nine days. But you said the fee petition said nothing. If I may, I think we must put that in context because on the same day that the fee motion was filed, exact same day, they filed 175 pages supporting final approval. They filed them, I think, within an hour or two of each other. There was 175 pages put in the docket citing 85 cases, five secondary authorities, on top of the fee motion which was filed, which cited 80 cases. But your objection is only to the fee aspect of the deadline, not to anything else. That's correct, but we also, at the upcoming fairness hearing, I also had to prepare for my objections to the underlying settlement. So when your Honor says that it would have been unfair for them to have filed 100 pages, they filed 200 and something pages. They doubled that amount. That's the amount of information that we had to receive, digest, be prepared to respond to in advance of the fairness hearing. We had very, very little time, and then the magistrate issued her report and recommendations on fees. I think that was on the 16th of September, which was the same day that she told us that Mr. Isakson was not going to be able to obtain any discovery. So I think if you look at it in total, with everything that was filed at the last minute, not just the attorney's fees, but everything that was rushed upon the objectors, I do think it was unfair. I've taken you way over your time, but you've answered the question. Thank you very much. Thank you, Your Honor. May it please the Court, good morning. The District Court was well within its discretion to approve this settlement, the third largest all-cash factus settlement in history at the time it was approved, and on par with the next two largest all-cash factus settlements on a per-class member basis. They have larger classes. Because it's all cash, there's no coupons, there's no reversion feature, none of this money will ever go back to Godiva, and there was no timely objection to the settlement amount. Neither of the appellants filed objections, challenged the $6.3 million recovery. They challenged, there were challenges to other aspects of the settlement, right? Yes, Your Honor, that's correct. Can I direct your attention to the commentary to Rule 23, which says in pretty plain terms, in setting the date objections are due, the Court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion. As I understand it, the deadline for class members to submit their claim form was August 23rd, and your petition for attorney's fees was well after that. How did you comply with Rule 23? Well, first of all, Rule 23H, the actual rule itself, simply says you have to provide notice of the fee motion in advance of the objection date, not the actual fee motion itself. And here, we did just that. Class notice not only told class members we'd be seeking fees, but it told them exactly the amount we'd be seeking, it told them how we were calculating it, i.e. on a percentage of the fund basis, and told them the exact percentage that we would be seeking as well. But as it pertains to, and by the way, Mr. Price's objection papers demonstrated the sufficiency of this notice because he lodged his objections to the fee request, he described what he thought was wrong with the fee request, he talked about how the docket showed the work we did in his objection papers itself. And I believe this court ran into a similar situation in Nelson v. Meade-Johnson, where a similar objection was lodged, and they said, well, they were able to describe what they thought was wrong with the fee request in their objection papers, so we don't see a problem here. But as to the objectors, the only two people who are here challenging the notice, they were given ample opportunity to address the fee motion after it was filed. Mr. Isaacson was given leave to file a brief in response to the fee motion and final approval motions. The district judge allowed them to take as much time as they wanted to express any objections they had at the fairness hearing, which lasted for an hour and a half. Of course, that presupposes that the deadlines the district court set didn't dissuade anybody else from trying to do what Mr. Isaacson and Mr. Price did. I don't think it would have dissuaded anybody. How do you know that? Well, because the notice tells them what the fee request is and Well, but these two gentlemen were not happy with that. That's true, but the other three You're assuming everybody else was happy, or that the other possibility is that they just thought it would be too much work and a short amount of time to be able to do anything about it. That's why I think the commentary suggests that the deadline should be different, because you should have everything told to the class members so they can act in an intelligent way. But I would think the other 318,000 class members that didn't raise any issue with the notice, if they had a problem with the notice itself, saying this is not giving me enough information, they would have spoke up. They had 60 days to do so, and nobody else is before your honors today challenging the notice. They didn't have your petition. Yes, that is correct, but they had the basis for the fee request and the exact amount and the percentage, and the opportunity to raise concerns if they thought that was insufficient. As to these objectors, the only people who are before the court today, in addition to the supplemental briefs they filed before the Fairness Hearing, the presentation at the Fairness Hearing, the district judge also took additional 20-page briefs from each of them after the Fairness Hearing before issuing his ruling on the fee request, and they conducted a de novo review, reading the additional 60 pages they filed, as well as the magistrate judge's report and recommendation, which did, by the way, go through all of the Johnson factors, contrary to the suggestion that it did. What was in the 175-page document? Mostly affidavits, Judge. Affidavits of counsel describing our qualifications to represent the class. And in the 80 pages? I'm not sure there was 80 pages, but again, if it was a fee motion with 80 pages, it would have been exhibits. We probably submitted affidavits twice, one to support our ability to represent the class and one to demonstrate our experience, but I apologize, I don't have the fee motions framed, but it wasn't 80 pages. Same affidavits? Yes. Signed affidavits. But it wasn't 80 pages at all. Same affidavits. Oh, I believe it was, yeah. The same or very similar. We might have, you know, had different dates on them, but the subs, if we're talking about the qualifications of counsel, it would have been the same, because it wouldn't have changed much between the two filings. Can we talk about the Article 3 standing of the named plaintiff? Absolutely, Your Honor. It's standing in two broad bucket ways, if you will, first, pursuant to the settlement agreement, and second, pursuant to the violation of fact itself. But you can't get standing to bring a claim because of the settlement to settle that claim, right? No, but you can convert, by creating additional new rights, that you have a concrete interest in enforcing, the settlement. Well, that means you may have an Article 3 interest in defending it, but it doesn't mean you had an Article 3 interest in bringing it. Well, I think the Article 3 interest . . . I mean, if Congress had passed a law that said, in its infinite wisdom, that credit card companies could not give you credit card receipts on blue paper, and your client had received a credit card receipt from Godiva on blue paper, do you think he'd have standing to sue? And Congress said, by the way, if you are so offended by this blue paper, you can sue and get statutory damages of 500 bucks a pop. Would your client have standing to sue? Well, I don't . . . I'm thinking carefully here, Your Honor, but that sounds like a procedural statute. They're concerned about not the substance of the right that's being created. No, I know, but I'm going to take you down a road, too. So, let's start with that one. Sure. Standing or no standing? Off the cuff, which is what I'm doing here, that's all I can ask for. Sure. If there's no substantive reason for blue paper, I can't think of any, that it's simply a procedural requirement, and statutory procedure may or may not convert to conviction-based standing. If Congress decides that it's not the blue paper, it doesn't matter what paper it is, but they can't print a receipt indicating the type of credit card you use. Forget the number. It says Visa, or MasterCard, or American Express, or Discover, XXXXXXX all the way, no numbers. And your client gets a receipt of that type. Would he have standing to sue? If Congress expressed a reason for that, sure. No, no reason. Congress doesn't have to express a reason. They just passed a law. Well, if there is no reason for it, then perhaps not. If there is a reason for it, then I would say yes. That's information an identity thief can use to try and- No, no. But your client says nothing else, says nothing else about whether or not he's had a risk of harm, whether he has been harmed, whether anything else. All he says is, I got this receipt back and it said Visa. Would he have Article III standing to sue? Not statutory standing. No, I understand. Article III standing to sue. Well, I just want to, as an aside here, I want to point out that Dr. Moransky did state that he was subject to an increased risk of identity theft as a result of the violation, so- Where did he say that in the complaint? I believe it's in paragraph 62. So you have to have a risk of identity theft to have Article III standing to sue? No. I believe that is a sufficient condition, but not a necessary one. What do you need to have? Well, that's one reason why Dr. Moransky has Article III standing, because he's pled the very injury that Congress passed FACTA to prevent an increased risk of identity theft caused by disclosing his private credit card information on the transaction receipt. But he can also satisfy Article III standing by demonstrating that the statute in question was enacted to provide, it was intended to create actionable rights, as in the Perry versus CNN case, where this court found that a violation of the Video Privacy Protection Act by itself, if nothing further, was an Article III injury because the statute's structure and purpose demonstrated that it was meant to provide actionable rights. That's exactly the case with FACTA. It was written to benefit a specific class of people, i.e., cardholders at the point of sale who receive an electronically printed receipt. Its purpose is to protect them from the risk of identity theft caused by creating a receipt that memorializes this private account information, where an identity thief could then find it. And the statute itself doesn't contain any procedures. It's not a procedural statute. The cases that actually analyze the nature of FACTA rights, like the Verizma versus Microsoft case, and so forth, they concluded, after this analysis, that it's a substantive right that is meant to be actionable rights. Even if you have no elevated risk of suffering any future harm? Correct. But we've alleged that here. But even if we didn't, the violation... So you could allege in your complaint that Dr. Moransky has no risk of future harm. But if you wanted to have a test case, and he pled that in his complaint, you would have Article III standing. For Havens Realty versus Coleman, I would say yes, absolutely, and even under Perry versus CNN as well. Both cases support that proposition. There are a couple of circuits that have gone against you on this issue. Well, the Second Circuit and Seventh Circuit cases, so Katz, Cooper-Wyman, and Myers, they didn't analyze whether the statute provided substantive actionable rights. They just assumed without analysis that it was merely... What's a substantive actionable right? Well, you look at the structure and purpose of the statute. I think that Justice Thomas' concurrence in Spokio itself really hits the nail on the head on this one, saying, you know, it's a common law. There's private rights. They're there to protect certain individuals, and the violation of that right alone creates a concrete injury. And he gives us an example, trespass. I put a toe on a blade of grass in your yard, and I have a... Breached your rights. And then he described... He contrasts that with, like, public injuries, like the statute at issue in Spokio, which doesn't... Isn't designed to specifically protect anybody in particular. It was entitled Compliance Procedures, and generally described what Consumer Reporting Bureaus must do in terms of the procedures they're supposed to follow, and this is discussed at length in the Eichenberg case. How many other justices joined Justice Thomas? Beg your pardon? How many others joined Justice Thomas' opinion? His concurrence was by himself, but the court didn't need to reach the issue, because they said, we're not deciding anything here, we're just remanding to have the Ninth Circuit complete its analysis. Your Honor, my time is up, but I wanted to add one note, if I may, about the Second Circuit's decision in Katz, if that's okay. Quickly. Very quickly. Katz is based on a fact finding that wasn't made here, and it was also based on a factual error, as well as the Gaston v. Bergkin case that follows the same reasoning. Basically, the court in those cases assumed that disclosing the first six digits is okay, even though FACTA expressly says the opposite, because they believed that because FACTA doesn't prohibit a merchant from disclosing the bank ID, the name of the issuing bank, and because the issuing bank is identified by the first six digits, that an identity thief could then just take the issuing bank's name, if it was on the receipt, and go look up your first six digits, and get the information that way. That's incorrect, because banks use hundreds of different first six digit combinations in the cards they issue, and so disclosing the name of the merchant bank alone, or the issuing bank alone, tells the identity thief nothing about your actual card number. And I would direct the Court's attention to our response to Mr. Isaacson's 28J submission regarding Gaston, that goes into detail on that point. Thank you.  Good morning, Your Honors. May it please the Court, Counsel, David Almeida, on behalf of Godiva, defended in the underlying proceedings. You thought you were done with all this, didn't you? Fair to say, Judge, yes. To begin, the settlement was unquestionably fair, reasonable, and adequate, and to start with the Spokio issue, Judge, it's important to consider the timing that this settlement was reached in November of 2015. At that time, the Spokio law was not as developed, obviously, as it is now, and it had just been argued to the Supreme Court in early November. This case mediated the very next day down here in South Florida. At the time, the prevailing sentiment in these statutory damages cases was exemplified by the Hammer decision out of the Eighth Circuit, which didn't focus at all on the concreteness or the actual injury. It looked to say, was there a particularized injury? Did something happen to that plaintiff, and that was sufficient to confer Article III standing? It wasn't until Spokio came down in May of 2016 that parties started examining the concreteness, the actual harm component, and to this day, that issue remains unsettled. But taking a step back to where we were in November of 2015, with Spokio just being argued, the parties were absolutely entitled to compromise a disputed jurisdictional question as well as disputed factual questions as to whether or not plaintiffs would ever be able to prove willfulness in this case that would entitle them to statutory damages. So November of 2015, after mediation, the parties reached that settlement, that class-wide settlement that compromised that jurisdictional question as embodied in the settlement agreement that was approved by the court preliminarily in January. The Schumacher v. SC data case, I think, hit the point home pretty closely to our situation, a fair credit reporting act class action, where a class-wide deal was reached. The defendant later on, in July of 2016, filed a 12B1 motion seeking to get out of the deal, and the court said, no, there is an interest in effectuating this settlement as embodied in the settlement agreement, and the deal goes forward. Similarly here, the only way that Appellate Isaacson gets before this court is a contractual interest as embodied in that settlement agreement, as Your Honor observed, likely he would not be here but for that ability to exemplify it in a settlement agreement. And I just want to touch briefly on the 23H issue, because the Mercury decision of the Ninth Circuit is very different from this case in the sense of that was a securities class action where the teacher's pension fund appealed, or filed an objection in response to a notice which specified the amount to be sought and the percentage, but never appealed at the final approval hearing, never requested supplemental briefing. Here, objectors had a full and fair opportunity to be heard, so I would submit to you that it was not an abuse of discretion for the district court to overrule. That was truly harmless error in this instance. The other cases, I see my time is up, may I conclude my thought? The other cases, the Bedolla case, which was decided in 2015, yet submitted a supplemental authority two days ago, were bad deals. There were reversions, there were clear sale agreements, they had all the hallmarks of a bad settlement. That's why they were sent back and the judge admonished the district court to get the timing issue correct later, but that was not the basis that most of these cases are sent back and would say that it's not appropriate to impose a per se rule here when the objectors had a full and fair opportunity to litigate the issue. Thank you. Thank you, your honors. Thank you, your honors. Of the four minutes of the reserve for rebuttal, I will be taking three, Mr. McDonald will be taking one. I'd like to address first the issue of Purdue and reasonable attorney's fees. Purdue says that the objectively reasonable attorney's fee in a contingency fleet class action that adequately compensates class counsel is their lodestar. I think that that is inconsistent with the notion that plaintiff's lawyers can come into court and say, give us a huge fee without even considering the hours that we put into the case, without us even telling the court or the class how many hours we put into the case. Even if the Johnson factors survived Purdue, the first Johnson factor is the time and labor required, and it indicates that the judge is supposed to carefully consider the hours that were actually devoted to the case. Another of the Johnson factors is the customary fee award in cases of this sort. Well, Purdue says that the fee award in fee shifting cases, cases subject to fee shifting statutes is the lodestar. I think that the court needs to consider, again, lodestar in evaluating the customary fee in these cases. Also asks about the fee awards in similar cases. The most important place to look when you're evaluating what the fee award is going to be in similar cases is what the Supreme Court says about reasonable fee awards in contingency fee class actions. The Supreme Court in Purdue says that if it's subject to a fee shifting statute, a reasonable fee award that adequately compensates class counsel and gives a sufficient incentive for filing such cases is their lodestar. Subject in extraordinary cases to an adjustment, potential upward adjustment, there was no effort to show any kind of extraordinary circumstances in this case. There was no evidence put into the record at all with respect to the lodestar, period. I have to say that I think the reason that lawyers don't put their hours in is because they're embarrassed at how little work they did on the case. It sets up a situation where you can have a business model that files a series of high stakes, high liability, potential liability cases. Here, over a third of a billion dollars in liability faced by Godiva. Then settle them for what basically amounts to nuisance value with the lawyers getting a large multiple of their reasonable hourly rates, which they would have been limited to. This is not a nuisance settlement case, right? Whatever you say about the attorney's fees, it's not a nuisance settlement case. It's all cash. It's hundreds of dollars for some or most of the class members. If you think that the injury is so insignificant or insufficient or nonexistent because a receipt was printed out with digits of a credit card number, then 200 odd dollars doesn't seem like nuisance value to me. Six million dollars is less than 2% of the potential liability that Godiva faced. I think that that falls into the category of- With Spokio in the distance. With Spokio in the distance where Spokio would mean that there shouldn't be any recovery at all. Correct, which means that a defendant, putting aside for a moment the Article III issue, a plaintiff's evaluation of that claim means that if there's a chance that everything could go by the wayside, the value of that claim is diminished. A defendant who thinks that he or she may have no liability if Spokio goes their way might think, eh, but if Spokio goes the other way, then I'm in for the full 100%, so why don't we compromise on something like this? They get something, we give up something, but no one loses the whole ball of wax. Why isn't that, again, putting the Article III issue aside for a moment, why isn't that a reasonable way of evaluating, not the attorney's fees, the settlement itself? Quite frankly, the amount of the settlement was not the primary focus of my objection below. When it comes to the, although I did point out that it was less than 2% of the total potential liability, what matters far more to me is that I don't think that we should have a system where plaintiff's counsel can settle cases and get a large multiple of the hourly rates that they would get if they won the cases, which is what the Supreme Court in Purdue says. You win the case, you're entitled to shift the fees to the defendants who violated a statute, they are going to have to pay your reasonably hourly rates. You settle the case for a far smaller sum and then charge your clients a large multiple, a multiple of two, three, four, five, six times what your hourly rates would have been. You do a lot of cases like that, you end up making plaintiff's lawyers incredibly wealthy at the expense of class members, and I quite think at the expense of the integrity of the system, Your Honor. Thank you very much. Thank you, Mr. Isakson. Mr. McDonough, I think you kind of took your time, but . . . Really quickly, Your Honors. Class counsel is entitled to their own opinion, but they can't reroute the rules of civil procedure, and I think that I heard them say that only notice had to be provided before the objection deadline in Rule 23 could not be cleared. A claim for an award must be made by motion, that is under H1, H2. A class member may object to the motion, not to the notice, to the motion. The same as anyone else seeking relief from the court. If you want something from the court, you file a motion, and then it's responded to if your opponent opposes the relief that you're requesting. It is not based on the notice, it is based on the motion. Secondly, when we talk about the notice, class members were not given any basis for the fee award, except that it was one-third, and frankly, many class members might think that one-third is the standard fee. Not until you would have read their fee motion would you understand that the Eleventh Circuit has a 25% benchmark. One-third is not a standard recovery, and they were exceeding it by 33% when they asked for 33% instead of 25. That extra 8% is 33% of 25%. They were seeking a significant enhancement. We understand your argument. Thank you very much. Thank you, Your Honors.